

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| THOMASINA WANDA KING,<br>　　　Plaintiff,<br>vs.<br><br>KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,<br>　　　Defendant. | §<br>§<br>§　　CIVIL ACTION NO.  4:22-03136-MGL<br>§<br>§<br>§<br>§ |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND AFFIRMING DEFENDANT'S FINAL DECISION DENYING BENEFITS**

　　　This is a Social Security appeal in which Plaintiff Thomasina Wanda King (King) seeks judicial review of the final decision of Kilolo Kijakazi, Acting Commissioner of Social Security (Kijakazi), denying her claim for supplemental security income (SSI).

　　　The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting Kijakazi's final decision be affirmed.

　　　The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)

The Magistrate Judge filed the Report on October 31, 2023; King filed her objections on November 15, 2024, and Kijakazi filed her reply on November 17, 2024. The Court has carefully reviewed King's objections, but holds them to be without merit. It will therefore enter judgment accordingly.

King filed her application for SSI on July 1, 2020. Kijakazi denied her claim, initially and upon reconsideration.

King then requested a hearing before an Administrative Law Judge (ALJ). After the hearing, the ALJ determined King had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, headaches, depression, and obesity. Nevertheless, in the ALJ's October 7, 2021, decision, he held King had failed to show she was disabled under the provisions of the Social Security Act (the Act).

After the Appeals Council denied King's request for review of the ALJ's decision, King filed this action for judicial review with the Court on September 15, 2022.

The Agency has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). The five steps are: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment(s); (3) whether such impairment(s) meets or equals an impairment set forth in the Listings; (4) whether the impairment(s) prevents the claimant from returning to her past relevant work; and, if so, (5) whether the claimant is able to perform other work as it exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v).

Under 28 U.S.C. § 636(b)(1), a district court is required to conduct a de novo review of those portions of the Magistrate Judge's Report to which a specific objection has been made. The Court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

It is the claimant's duty both to produce evidence and prove she is disabled under the Act. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Nevertheless, the ALJ is to develop the record and when he"fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).

It is also the task of the ALJ, not this Court, to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "It is not within the province of this [C]ourt to determine the weight of the evidence; nor is it [the Court's] function to substitute [its] judgment for that of [the defendant] if [the] decision is supported by substantial evidence." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In other words, the Court "must sustain the ALJ's decision, even if [it] disagree[s] with it, provided the determination is supported by substantial evidence." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). Under the substantial evidence standard, the Court must view the entire record as a whole. *Steurer v. Bowen*, 815 F.2d , 1249, 1250 (8th Cir. 1987).

Although ALJs must sufficiently explain the reasons for their rulings to allow this Court to provide meaningful review, *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013), "the ALJ is not required to address every piece of evidence[;] [instead,] he must . . . build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citations omitted). The Court's "general practice, which [it] see[s] no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005).

"[T]he substantial evidence standard presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988) (citations omitted) (internal quotation marks omitted) (alteration omitted). Put differently, if the ALJ's "dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported." *Kellough v. Heckler*, 785 F.2d 1147, 1149 (4th Cir. 1986).

With this law as a framework, the Court will consider King's one objection to the Report. According to King, "[t]he Magistrate [Judge] finding the ALJ adequately explained his [Residual Functional Capacity (RFC)] determination is in error." Objections at 1 (emphasis omitted).

In the RFC for King, the ALJ concluded the following:

> [King] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds and can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can frequently engage in overhead reaching and fingering with her bilateral upper extremities. She cannot work outdoors, and remains capable of exposure to moderate levels of noise as that term is defined in the DOT. She can tolerate occasional exposure to hazards such as unprotected heights and moving machinery. She remains capable of tasks consistent with a reasoning development level of 2 or less as defined within the DOT in an environment requiring no more than occasional changes in work setting or duties. She remains able to concentrate and persist with work tasks at an acceptable pace for 2-hour increments, but will be off-task for 5% of the workday, exclusive of regularly scheduled breaks. She can occasionally interact with the public.

A.R. at 17 (emphasis omitted).

King's objection contains several sub-parts. First, in regards to the ALJ's explanation of the RFC, "King asserts . . . the ALJ decision fails to adequately explain why the medical evidence failed to support King's allegations . . . she would not have been able to perform light work, which requires standing and walking the majority of the day and lifting up to [twenty] pounds." Objections at 2. According to King, the ALJ's "limited rationale explaining why he thought she could perform light work despite the objective evidence did not provide a meaningful basis to dismiss King's allegations and her treating doctor's opinion." *Id*.

King claims the ALJ's objective finding of the "extensive degenerative changes throughout her spine . . . . well supported [her] testimony . . . she could not stand or walk more than very short periods of time." *Id*. at 2-3. The Court is unable to accede to these arguments.

The ALJ provided the following reasons for his decision:

> After careful consideration of the evidence, the undersigned finds . . . [King's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> First, the claimant's treatment regimen is inconsistent with her allegations. The claimant continually complains about lower back pain, but has never seen a specialist or pursued more intense treatment options, such as surgery. The nature of [King's] continuing treatment is not supportive of her subjective allegations, and so those allegations are not persuasive.
>
> Second, [King's] alleged limitations are not consistent with her activities of daily living. The claimant is able to attend to her personal care, laundry, cooking, and some housework such as cleaning her home and washing dishes. She has also advised treating sources that she assists in the care of her ailing mother. The fact that she does all of these activities of daily living without issue despite her report of severe limitation does not indicate that her impairments

5

> result in functional limitations which would preclude the residual functional capacity above.
>
> Third, her allegations regarding disability are inconsistent with her past work history. The claimant reported that she stopped working in the early 2000s due to her HIV diagnosis, which remains well-controlled with medications. However, despite alleging disability since that time, she did not apply for disability until July 1, 2020.
>
> For these reasons, the undersigned finds [King's] testimony inconsistent with the medical evidence[.]
>
> * * * * *
>
> The objective findings of [King's] physical and mental impairments are not consistent with limitations greater than those contained within the residual functional capacity. Records show that she typically retains a normal gait, and most frequently displays nothing more than tenderness to palpation across the period at issue, aside for some recent outlying records received from her pain management doctor. Her medications to treat the pain involved remain mild, and there is no indication in the records of any injections or talk of surgical intervention. At the hearing, the claimant testified to the use of a cane for the last few months, but there is no evidence that this is prescribed, and records report that her gait remains normal with no such device being reportedly used. The reduced light residual functional capacity above accounts for both her degenerative changes and her obesity, with the additional limitations from climbing an overhead reaching that are more focused on the complaints stemming from her cervical pain. [King's] occasional headaches are accounted for in the residual functional capacity above regarding her complaints of photophobia by limiting her from outdoor work and adding in noise restrictions.

A.R. at 19-21(citations omitted).

King seems to be asking the Court to reweigh the evidence in this case. But, as the Court stated above, that is outside the province of this Court. The weighing of evidence in a case such as this is solely the job of the ALJ. *Laws*, 368 F.2d at 642. Thus, leaving that job to the ALJ, the Court easily concludes the explanation above, coupled with the remainder of the ALJ's decision, is more than enough "to adequately explain why the medical evidence failed to support King's

allegations that she would not have been able to perform light work[.]" Objections, at 2. In fact, this ALJ provides a much more exhaustive explanation of his decision than many of the others the Court has reviewed and affirmed in the past.

Second, King complains "the ALJ pointed to the fact that more aggressive treatment for her back pain, such as surgery, was not pursued. But, as treatment notes reveal, King was not a surgical candidate due to her weight[.] Objections at 3. According to King, "[t]his fact is not acknowledged by the ALJ." *Id*.

Although the record does indeed contain a note in her pain management doctor's records stating "[King] is not a surgical candidate because of her weight[,]" A.R. at 589, that is outside the province of a pain management doctor to decide. And, such a notation fails to suggest that there was ever a recommendation for such a surgery. In fact, the Court has been unable to find any such suggestion for surgery in the record. The gist of the ALJ's statement King "has never . . . pursued more intense treatment options, such as surgery[,]" A.R. at 19, is that more intense treatment options have been unnecessary.

Thus, given the record and the ALJ's explanation for his decision to deny King's SSI claim, the fact he failed to mention the pain management doctor's opinion, that King's weight was a hindrance to her having surgery, is inconsequential. As the Court observed above, "the ALJ is not required to address every piece of evidence[;] [instead,] he must . . . build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872.

Third, King argues "there are some doubts about King's ability to afford more specialized treatment. As the ALJ himself pointed out, King was unable afford physical therapy treatment." Objections at 3. "It is therefore questionable[,]" King contends "whether she could afford any more specialized or aggressive treatment such as fusion surgery." *Id*.

7

It is well-settled Fourth Circuit law that "[a] claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984).

As the Magistrate Judge observes, however, "[n]o arguments were made at the hearing . . . [King] could not afford treatment and [she] did not testify that she could not afford to seek treatment." *Id.* Additionally, having made a de novo review of the record, the Court concludes King is unable to show she was penalized for failing to seek any treatment she was unable to afford.

As the Court stated before, the ALJ thought King failed to go through a more intense treatment regimen because it was unwarranted.  Whether she could afford what was unneeded is unimportant.  King required only conservative treatment.  Thus, at the risk of belaboring what was a straightforward point by the ALJ, King's "treatment regimen is inconsistent with her allegations." A.R. at 19.

Third, King maintains "[t]he ALJ also noted normal gait findings.  However, there is no evidence these references in the file were anything more than the doctors observations in the room the examination was performed in; this did not constitute evidence King could stand or walk for prolonged periods." According to King, "[t]he basis to reject the strong objective evidence is not substantially supported." Objections at 4.

The ALJ made clear why he rejected King's alleged functional limitations: because she had failed to show they could reasonably be accepted as consistent with the medical and other evidence. As the Court noted earlier, it is the claimant's duty both to produce evidence and prove she is disabled under the Act. *Pass*, 65 F.3d at 1203.

Here King failed to present evidence sufficient to convince the ALJ she is unable to stand or walk for prolonged periods. Again, King's "treatment regimen is inconsistent with her allegations." A.R. at 19.

For all of these reasons, the Court will overrule King's objection.

In sum, the Court has little trouble concluding there is substantial evidence to support the ALJ's conclusion King failed to establish she was disabled under the Act during the relevant time period; the ALJ's decision is detailed enough to permit this Court's review; the ALJ's decision is free from any reversible legal error; and the ALJ's determination is reasonable.

Thus, after a de novo review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules King's objections, adopts the Report, and incorporates it herein. Therefore, it is the judgment of the Court Kijakazi's final decision denying King's SSI claim is **AFFIRMED**.

**IT IS SO ORDERED**.

Signed this 26th day of March, 2024, in Columbia, South Carolina.

                                                      s/ Mary Geiger Lewis  
                                                      MARY GEIGER LEWIS  
                                                      UNITED STATES DISTRICT JUDGE